IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

GAIL L. MENDEZ

                                        OPINION AND ORDER

      v.

                                        12-cv-228-wmc/09-cr-142-wmc

UNITED STATES OF AMERICA
_____

Gail L. Mendez ("Mendez") moves to vacate, set aside, or correct the sentence that she received in *United States v. Mendez*, No. 09-cr-142-wmc, alleging that she was denied effective assistance of counsel. Mendez contends that her defense counsel was deficient for failing to secure the benefit of a plea agreement in which the government had conditionally proposed recommending a downward adjustment in sentence for acceptance of responsibility. Mendez further blames her attorney for the enhanced sentence that she received, which did not include credit for acceptance of responsibility. The government argues that her motion is without merit. For reasons outlined below, the court agrees.

BACKGROUND

On December 17, 2009, Gail Mendez, a former tax preparer, was charged with one count of bank fraud and one count of making false statements in connection with a loan or credit application. In particular, Mendez was accused in connection with a scheme to defraud a local federally-insured financial institution by using Individual Tax Identification Numbers ("ITINs") and false tax returns to obtain real estate mortgage loans. Mendez, who was arrested in the Southern District of Texas following a trip to Mexico, was detained pending trial due to a risk of flight.

1

Additional investigation disclosed more fraud, as well as false statements by Mendez as a preparer of income tax filings.  Specifically, Mendez and others working at her direction (including her own son) filed amended tax returns by adding fictitious dependents that resulted in additional tax refunds under the child tax credit provisions. Agents also discovered that Mendez and her co-defendants produced false documents and engaged in the destruction of evidence material to the investigation, all in an effort to conceal their fraudulent loan and tax refund schemes.

On April 8, 2010, the grand jury returned a forty-seven count, superseding indictment.  The superseding indictment charged Mendez with ten counts of bank fraud (counts one through ten), one count of conspiracy to obstruct justice (count eleven), four counts of making false statements in connection with a credit or loan application (counts twelve through sixteen), thirty counts citing specific instances of fraud and making false statements in connection with income tax filings (counts seventeen through forty-six),[1] and one substantive count of obstruction of justice (count forty-seven).

On July 27, 2010, the U.S. Attorney's Office sent Mendez's counsel, Attorney Victor Arellano ("Arellano"), a proposed draft plea agreement.  (Dkt. # 11, Exh. A.)  In this proposed agreement, Mendez would plead guilty to one count of conspiracy to commit bank fraud and one count of filing false tax returns as a tax preparer.   In exchange, the government would agree to recommend the maximum available reduction in sentence for acceptance of responsibility, provided that Mendez did not engage in any conduct that was inconsistent with accepting responsibility.

---

[1] Fifteen counts were pursuant to 26 U.S.C. § 7206(1), and fifteen counts were pursuant to 26 U.S.C. § 7206(2).

On August 13, 2010, the U.S. Attorney's office withdrew the original draft plea agreement and sent Arellano a revised proposal.  (Dkt. # 11, Exh. B.)  Like the original, the revised plea agreement contemplated a guilty plea to one count of bank fraud and one count of filing false tax returns as a tax preparer.   In addition, the prosecutor informed Arellano that he had obtained recordings of several phone calls from the jail, reflecting that Mendez was attempting to hide property that she owned in Mexico.  The prosecutor told Arellano that if Mendez continued to engage in conduct inconsistent with the acceptance of responsibility, such as seeking pretrial release based on the argument that she does not have property in Mexico, he would not recommend any downward adjustment.

On August 20, 2010, Mendez moved for pretrial release, denying that she had property or any other assets in Mexico.  At a hearing on that motion, the government presented the recorded jail phone calls, which indicated that Mendez had a home and other personal possessions in Mexico.  The presiding magistrate judge denied the motion for pretrial release after finding that Mendez had "actively misled the court about her assets cached in Mexico."  After the hearing, the prosecutor sent Arellano a third plea agreement, which did not include a recommendation for a downward adjustment for acceptance of responsibility.  (Dkt. # 11, Exh. C.)

On August 23, 2010, Arellano called the prosecutor and told him Mendez wanted to accept the previous proposed plea agreement, in which the government would agree to recommend a downward adjustment for acceptance of responsibility, explaining that a "miscommunication" prevented him from knowing of Mendez's intent to accept that

agreement until after the pretrial release hearing.  The prosecutor again declined to recommend a downward adjustment for acceptance of responsibility and submitted a fourth draft of a written plea agreement.  (Dkt. # 11, Exh. D.)  Under the terms of this plea agreement, Mendez agreed to plead guilty to one count of conspiracy to commit bank fraud and one count of filing false tax returns as a tax preparer.  The government would make no recommendations for downward adjustment of sentence based on acceptance of responsibility.  Mendez, however, reserved the right to request such a downward adjustment from the court.

At a hearing on August 31, 2010, Mendez entered a guilty plea pursuant to the fourth proposed plea agreement, which the court accepted pending review of a pre-sentence report ("PSR") by the probation office.  Accordingly, the court found her guilty as charged of one count of conspiracy to commit bank fraud and one count of filing false tax returns as a tax preparer.

The probation office determined that:  (1) the scheme to commit bank fraud resulted in an actual loss of $488,839.00; and (2) the false tax returns filed by Mendez resulted in a loss of $925,687.40.  In addition to the amount of loss, the probation office recommended enhancements to the potential sentence given that:  (1) Mendez was an organizer, leader, manager or supervisor of the fraudulent scheme; and (2) Mendez used her position of trust and special skill as a tax preparer to falsify documents necessary to commit or conceal the offenses.  The probation office also recommended an enhancement for obstruction of justice based on Mendez's willful attempt to impede the official investigation by producing false documents and destroying material evidence.

4

Because she obstructed justice, the PSR contained no recommendation for a downward adjustment for acceptance of responsibility. As a result, the probation office calculated Mendez's total offense level as 28. With a criminal history score of zero, the probation office determined that Mendez faced a potential range of 78 to 96 months' imprisonment under the advisory sentencing guidelines.

Arellano objected to the PSR on Mendez's behalf. Specifically, Arellano objected to the loss calculation and the amount of restitution. Arellano also objected to the enhancement for obstruction of justice and the denial of credit for acceptance of responsibility.

On November 3, 2010, Mendez filed a motion for appointment of new counsel and postponement of sentencing. This court granted the motion and appointed new counsel, Robert Ruth ("Ruth"), to represent Mendez. In a sentencing memorandum, Ruth acknowledged that the advisory guidelines range of imprisonment was 78 to 96 months, but asked for a sentence below that range. In particular, Ruth argued that the PSR placed undue emphasis on Mendez's role in obstructing the investigation and lack of acceptance of responsibility. Mendez also submitted a letter to the court claiming that Arellano failed to inform her of the government's offer to recommend less prison time in exchange for a guilty plea until it was too late.

At the sentencing hearing on January 27, 2011, the court found that Mendez faced a potential range of 78 to 96 months in prison under the advisory guidelines based on the amount of loss and the enhancements outlined in the PSR. The court declined to award credit for acceptance of responsibility. Nevertheless, after considering other

factors pursuant to 18 U.S.C. § 3553(a), the court departed below the recommended guidelines range and sentenced Mendez to serve a total of 66 months in federal prison (50 months for count one and 16 months for count two).

Mendez pursued a direct appeal, which she voluntarily dismissed on the advice of appointed counsel on August 26, 2011. On March 26, 2012, Mendez filed a motion to vacate, set aside, or correct her sentence due to ineffective assistance of counsel.

OPINION

A motion for relief pursuant to 28 U.S.C. § 2255 invokes "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 520 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)). Thus, a movant under § 2255 "must clear a significantly higher hurdle" than the standard applicable on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). Moreover, relief under § 2255 is appropriate only where a defendant establishes "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)).

In this case, Mendez claims entitlement to relief because she was denied her Sixth Amendment right to receive effective assistance of counsel in connection with her guilty plea and sentencing. These claims are addressed separately below.

## I.    Ineffective Assistance of Counsel - - Guilty Plea

Claims for ineffective assistance of counsel are analyzed under a standard first articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under this standard, a defendant must demonstrate (1) a constitutionally deficient performance by counsel *and* (2) actual prejudice as a result of that deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

Mendez contends that Attorney Arellano was deficient by failing to accept promptly the second draft plea agreement, which included the following offer from the government:

> The United States agrees to recommend that the Court, in computing the advisory Sentencing Guideline range, and in sentencing the defendant, give the defendant the maximum available reduction for acceptance of responsibility.  This recommendation is based upon facts currently known to the United States and is contingent upon the defendant accepting responsibility according to the factors set forth in USSG § 3E1.1.  The United States is free to withdraw this recommendation if the defendant has previously engaged in any conduct which is unknown to the United States and is inconsistent with acceptance of responsibility, or if she engages in any conduct between the date of this plea agreement and the sentencing hearing which is inconsistent with acceptance of responsibility.  This recommendation is contingent on the defendant entering a guilty plea on or before August 19, 2010.

(Dkt. # 11, Exh. B.)  This language was withdrawn from later proposed plea agreements because Mendez did not enter a guilty plea by the August 19, 2010, deadline.

Even assuming that Arellano was deficient for failing to communicate her acceptance of the second draft plea agreement before August 19, Mendez cannot

demonstrate actual prejudice as a result.  The Supreme Court has observed that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, — U.S. —, 132 S. Ct. 1399, 1408 (2012).  To show prejudice where a plea offer has lapsed or been rejected because of counsel's deficient performance, a defendant must demonstrate a reasonable probability both that (1) she would have accepted the more favorable plea offer had she been afforded effective assistance of counsel, and (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." *Id*. at 1409.  Mendez can demonstrate neither.

As the offer states unambiguously and Mendez concedes, the government remained free to withdraw any recommendation for a downward adjustment based on acceptance of responsibility if she engaged in conduct that was inconsistent with the acceptance of responsibility.  At the pretrial detention hearing on August 20, 2010, the court found that Mendez actively misled the court about her assets and ownership of property in Mexico while seeking pretrial release.  By attempting to hide assets located in Mexico, Mendez took actions that were inconsistent with acceptance of responsibility. Taking a position inconsistent with acceptance of responsibility is a defendant's personal decision that cannot be blamed on defense counsel. *See United States v. Sanchez*, 984 F.2d 769, 774 (7th Cir. 1993).

Based on the allegations of obstruction of justice and Mendez's actions inconsistent with the acceptance of responsibility, Mendez simply cannot show that she would have received the benefit of a downward departure for acceptance of responsibility,

8

even if her attorney had timely communicated her intent to accept the second draft plea agreement. As a result, Mendez has failed to demonstrate that her guilty plea was tainted by ineffective assistance of counsel. Moreover, for reasons explained on the record at the time of sentencing, this court would not have altered its sentence even if the government *had* requested that Mendez receive the maximum additional reduction for pleading guilty.

## II.   Ineffective Assistance of Counsel - - Sentencing

Arguing that she should have received a lighter sentence, Mendez also faults Attorney Arellano with respect to the result of her sentencing proceeding. In particular, she appears to claim that the probation office's tax loss calculation was incorrect. She argues further that her sentence was improperly enhanced for abusing her position of trust as a tax preparer and that she was wrongfully denied a downward adjustment for acceptance of responsibility.[2]

These arguments too, lack merit. Again, assuming that Arellano's performance was deficient, Mendez cannot demonstrate that she was actually prejudiced because the court granted her motion for new counsel in connection with the sentencing proceeding. In that respect, Mendez was represented at sentencing by Attorney Ruth, who lobbied successfully for a sentence below the recommended advisory guideline range. It follows that Mendez cannot show that she received ineffective assistance at sentencing based on Arellano's efforts. Mendez also does not demonstrate that any of the enhancements were

---

[2] Mendez makes additional allegations of malpractice and breach of fiduciary duty by Arellano, noting that she filed a grievance against him with the Wisconsin State Bar Association.

unwarranted or that her sentence was calculated incorrectly.   Her arguments are addressed briefly below.

### A.  Amount of Tax Loss

Mendez pled guilty to count 20 of the superseding indictment, charging her with willfully aiding the filing of false tax returns.   To determine her sentencing guideline range, the probation office was authorized to consider all relevant conduct, including all reasonably foreseeable acts and omissions of others in furtherance of a jointly undertaken activity and the scope of the criminal activity the defendant agreed to jointly undertake. *See* U.S.S.G. § 1B1.3.

The court ultimately determined the amount of loss attributable to Mendez's illegal conduct based on a civil audit of tax returns filed by the business owned by Mendez (Mendez Connections) and interviews with tax payers:

> Investigators determined over 11,000 tax returns were filed for Mendez Connections clients from 2004 to 2008.   The IRS randomly audited 424 returns.   Of these returns, 420 were found to be erroneous for the same reason, the disallowance of claimed dependents for not meeting the requirements of a dependent and the disallowance of subsequent claimed tax credits.   Initial audits revealed a tax loss of $1,397,953.40; however, $585,381 of this loss was attributed to taxpayers who failed to respond to the civil tax audit request or did not receive notice of the audit.   The defendant was responsible for devising and executing the illegal practice of claiming dependents without proper documentation.   She was aware of the entire scope of the jointly undertaken criminal activity.
>
> In addition to the civil audits, criminal investigators conducted interviews with taxpayers and determined an additional tax loss of $113,115 was realized as a result of the disallowance of claimed child tax credits.   This results in a criminal tax loss of $925,687.40 ($1,397.953.40 - $585,[381].00 + $113,115 = $925,687.40).

(Dkt. # 71, PSR ¶¶ 64-65.)   Applying this loss calculation, the base offense level for the

offense listed in count 20 of the superseding indictment was determined to be 20, because the offense, including relevant conduct, involved a tax loss of more than $400,000 but less than $1,000,000.  (*Id.* at ¶ 86; U.S.S.G. § 2T4.1(H).)

Mendez failed to demonstrate that there was an insufficient factual basis for the amount of tax loss or show that it was calculated incorrectly.  Her unsupported allegations show neither that the base offense level was calculated incorrectly, nor that she would have received a different sentence if her attorney had raised an objection to the tax loss amount.  *See, e.g., Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010) ("When challenging his sentence, a petitioner must show that but for counsel's errors, there is a reasonable probability that he would have received a different sentence.").  Thus, Mendez does not establish deficient performance or actual prejudice as the result of her attorney's failure to challenge the tax loss amount.

### B.  Role in the Offense — Abuse of Position of Trust or Special Skill

The probation office determined that Mendez was eligible for a two-level enhancement pursuant to U.S.S.G. § 3B1.3 because of her role as a tax preparer or "IRS Acceptance Agent":

> Adjustment for Role in the Offense:  Section 3B1.3 provides a two-level increase if the defendant "abused a position of public or private trust or used a special skill in a manner that significantly facilitated the commission or concealment of the offense."  The defendant was an IRS Acceptance Agent.  She was authorized by the IRS to facilitate the ITIN application process by reviewing identification documents required by the IRS then forwarding the completed application to the IRS.  . . .

(Dkt. # 71, PSR ¶¶ 83, 90.)  Because her position of trust and special skills as a tax preparer enabled her to falsify tax documents necessary for both the loan fraud and the

11

tax fraud scheme, the probation office recommended that the a two-level enhancement found in § 3B1.3 apply.  (*Id.*)

Relying primarily on *United States v. Fuchs*, 635 F.3d 929 (7th Cir. 2011), Mendez maintains that the enhancement was improper because she had no fiduciary or special relationship with the defrauded bank in this instance (Park Bank).  In *Fuchs*, the Seventh Circuit found that the two-level enhancement for abusing a position of trust was inapplicable for a broker who helped clients finance residential real estate transactions because the broker's relationship with the defrauded lender was, at most, "an ordinary, commercial relationship" and, therefore, insufficient to trigger an upward adjustment under § 3B1.3.  *Fuchs*, 635 F.3d at 934.

The *Fuchs* case and others cited by Mendez are distinguishable, however, because Mendez was not acting as a mortgage broker, but as a tax preparer.  As other courts have recognized, a tax preparer has been held to occupy a position of trust for purposes of the two-level enhancement found in U.S.S.G. § 3B1.3.  *See United States v. Sedore*, 512 F.3d 819, 823-26 (6th Cir. 2008) (holding that application of the two-level enhancement pursuant to U.S.S.G. § 3B1.3 was proper for a tax preparer who occupied a position of trust); *United States v. Godwin*, 272 F.3d 659, 671 (4th Cir. 2001) (same); *United States v. Noske*, 117 F.3d 1053, 1060 (8th Cir. 1997) (same);  *United States v. Sinclair*, 416 F. App'x 231, 232 (4th Cir. 2011) (same); *United States v. Uzoefune*, 334 F. App'x 360, 362-63 (2d Cir. 2009) (same) (citing *United States v. Hirsch*, 249 F. App'x 863, 865 (2d Cir. 2007)).  The enhancement found in § 3B1.3 has also been upheld in cases where a tax preparer has relied on special skill to commit the offense.  *See United States v. Noah*, 130

F.3d 490, 500 (1st Cir. 1997) (finding that a tax preparer was eligible for enhancement under § 3B1.3 because he employed a special skill in preparing and filing tax returns); *United States v. Mercer*, 472 F. Supp. 2d 1319, 1321-22 (D. Utah 2007) (same); *United States v. Hollender*, 85 F. App'x 787, 790 (2d Cir. 2004) (same); *United States v. Rorex*, 16 F.3d 1214, 1994 WL 57266, *1-2 (5th Cir. 1994) (same).

In this case, Mendez's position and skill set as a tax preparer enabled her to falsify tax documents that were necessary for both the loan fraud and tax fraud scheme. Significantly, her status facilitated the commission or concealment of those offenses. In any event, Mendez has not demonstrated that her sentence was enhanced improperly under § 3B1.3 or that her attorney was deficient for failing to object on the basis outlined in *Fuchs*. Accordingly, she is not entitled to relief on this issue.

## C. Obstruction of Justice and Denial of Acceptance of Responsibility

Noting that she pled guilty, Mendez maintains that she was entitled to a reduction in sentence based on credit for acceptance of responsibility. "The mere fact that a defendant enters into a plea agreement is insufficient under the guidelines and case law to entitle him to a downward adjustment; rather, the defendant has the burden of demonstrating that he has actually accepted responsibility for his actions." *United States v. Taliaferro*, 211 F.3d 412, 414 (7th Cir. 2000) (citing *United States v. McIntosh*, 198 F.3d 995, 999 (7th Cir. 2000)).[3] Mendez did not meet this burden either.

---

[3] Indeed, Mendez was warned at the time of her plea that a downward adjustment might be denied her if there is a reason to question her acceptance of responsibility.

Section 3E1.1(a) of the guidelines indicates that a two-level downward adjustment should be granted if a defendant clearly demonstrates acceptance of responsibility for her involvement in the offense. The probation officer observed that Mendez was not eligible for a downward adjustment for acceptance of responsibility because she received a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. In that respect, the PSR noted that Mendez actively impeded the official investigation in the following manner:

> The defendant produced false documents and destroyed evidence that was material to the official investigation in this case. Upon notification of possible law enforcement investigation, the defendant directed her employees, Marty Mendez and David Knickmeier, to assist her with removing incriminating information from, and falsifying documents in client files to cover up the illegal activities. The defendant willfully attempted to obstruct or impede the administration of justice. Pursuant to the policy statement at § 3C1.1, Application Note 4(c), the two-level increase is recommended.

(Dkt. # 71, PSR ¶ 70.) The court followed this recommendation and found the two-level enhancement for obstruction of justice was warranted. Mendez makes no effort to show that this enhancement was applied in error.

Section 3E1.1, Application Note 4 of the guidelines states that conduct resulting in an enhancement for obstruction of justice under § 3C1.1 "ordinarily indicates that the defendant has not accepted responsibility for [her] criminal conduct." Although there may be "extraordinary cases" in which adjustments under both §§ 3C1.1 and 3E1.1 may apply, Mendez does not demonstrate that her case meets this criteria.

As the PSR noted, Mendez also engaged in other conduct that was inconsistent with the acceptance of responsibility:

14

> The defendant fled the jurisdiction after she was summoned to court.  She
> was able to relocate at least two assets, namely vehicles, to Mexico.  She
> was arrested in the Southern District of Texas on the warrant that was later
> filed in the case.  The defendant also refused to provide information
> regarding assets to the Court in connection with her detention hearings.

(Dkt. # 71, PSR ¶ 72.)  In fact, the magistrate judge found that Mendez "actively misled

the court" about her assets in Mexico and that she was untruthful during her detention

hearing. (Dkt. # 61.)

Noting that her actions were inconsistent with acceptance of responsibility, the

government declined to recommend a downward departure.  Mendez disputes that she

"fled the jurisdiction" after learning of the investigation, noting that she returned to the

United States from Mexico on her own accord.  Nevertheless, she does not establish that

a downward adjustment for acceptance of responsibility was warranted or that her

counsel was otherwise deficient for failing to seek a reduction of sentence on this basis.

In summary, Mendez has not shown that she was denied effective assistance of

counsel or that she is otherwise entitled to relief from her conviction and sentence under

28 U.S.C. § 2255.  Absent a valid claim for relief, her § 2255 motion must be denied.


## III.    Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings for the United

States District Courts, the court must issue or deny a certificate of appealability when

entering a final order adverse to the applicant.  A certificate of appealability will not issue

unless the applicant makes "a substantial showing of the denial of a constitutional right,"

28 U.S.C. § 2253(c)(2), which requires an applicant to demonstrate "that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or

wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Under the controlling standard, this requires an applicant to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the applicant must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Although Rule 11 allows the court to direct the parties to submit arguments on the possible issuance of a certificate of appealability, it is unnecessary to do so in this instance. For the reasons stated above, the court concludes that no reasonable jurist would debate whether a different result was required. For this reason, no certificate of appealability will issue.

ORDER

IT IS ORDERED:

> (1) Gail Mendez's motion for relief from her conviction and sentence under 28 U.S.C. § 2255 is DENIED; and

16

(2) A certificate of appealability is DENIED.  If Mendez wishes she may seek a certificate from the court of appeals under Fed. R. App. 22.

Entered this 14th day of October, 2014.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge